# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| EVERI PAYMENTS, INC., successor in interest to, and formerly known as, GLOBAL CASH ACCESS, INC.,<br><br>Appellant,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF REVENUE,<br><br>Respondent. | No.  50791-9-II<br><br><br><br><br>PUBLISHED OPINION |

WORSWICK, J. — Everi Payments Inc., (Everi), a corporation that provides cash access services at tribal casinos, appeals a superior court summary judgment order dismissing Everi's complaint for a business and occupational (B&O) tax refund.  Everi argues that the B&O tax at issue is improper because the tax is preempted by federal law through the Indian Gaming Regulatory Act (IGRA), the Indian Trader Statutes, and the *Bracker*[1] balancing test, and that the tax is inconsistent with Department of Revenue Rule 192(7).  Alternatively, Everi argues that if the B&O tax is not completely preempted, there is a question of material fact as to the amount of B&O tax Everi is obligated to pay because it was acting as the tribes' agent when it received some of its revenue.

---

[1] The *Bracker* test balances federal, tribal, and state interests to determine whether federal law preempts state authority over conduct on tribal lands.  *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-45, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980).

No. 50791-9-II

We hold that the B&O tax assessed against Everi is neither preempted by federal law nor inconsistent with Department Rule 192(7). Additionally, we hold that, as a matter of law, Everi was not acting as the tribes' agent when it collected revenue. Accordingly, we affirm the order granting summary judgment to the Department of Revenue.

FACTS

Everi, formerly known as Global Cash Access Inc., is a Delaware for-profit corporation headquartered in Las Vegas, Nevada. It is not a federally recognized Indian tribe or member of a tribe. For its operations in the state, Everi employs Washington residents and also employs nonresident employees who visit Washington and use Seattle-Tacoma airport and Washington roads.

Everi provides cash access services to tribal casinos in the form of self-service kiosks located on the casino floor.[2] Cash access services include ATM (automatic teller machine) withdrawals, credit card cash advances, debit card points-of-sale, and check cashing. Cash access services allow patrons to obtain cash without leaving the casino floor. A casino patron using cash access services pays a surcharge or transaction fee for the service. Everi acknowledges that its cash access services and the kiosks are not games of chance or class I, II, or III gaming. Everi also acknowledges that for the relevant time periods here, it did not track whether kiosk patrons were Indian or non-Indian.

---

[2] Everi's only business activity at issue here is cash access services. Everi's kiosks also provided "ticket-in, ticket out" for slot machine earnings redemption and bill-breaking. Clerk's Papers (CP) at 946. Further, Everi was authorized by the Washington State Gambling Commission to sell gambling devices and games of chance.

2

To use one of Everi's kiosks to access cash, a casino patron swipes or inserts his or her debit or credit card. After validating the card, the machine requests the patron enter an amount of cash to withdraw. Once the amount is entered, Everi's kiosk notifies the patron that a fee will be charged for the transaction and asks the patron if he or she agrees to pay the fee. If the patron does not agree, the transaction is cancelled. No fee is collected if the transaction is cancelled. If, however, the patron agrees to the fee, Everi then sends a request for approval for the cash and fee to be withdrawn. The Everi kiosk sends the request for approval for the cash and fee to be withdrawn to its third-party processor located in California.

The third-party processor obtains approval from the patron's issuing financial institution through the appropriate network (Visa, MasterCard, etc.). Once an approval message is received, the patron's financial institution sends the amount requested by the patron, plus the fee, to Everi's bank account, and the kiosk dispenses the requested cash to the patron. Everi earns additional revenue from reverse interchange fees paid by the patron's issuing bank to Everi.

Everi maintains contracts with a number of Indian tribes in Washington.[3] These contracts govern the types of services Everi provides and the amount of the fees Everi charges the casino patrons for the cash access services. The contracts also determine what portion of the fees are kept by Everi and what portion Everi distributes to the tribes as commissions. Depending on the

---

[3] Everi was licensed by the Washington State Gambling Commission. As required by Washington-Tribal gaming compacts, Everi was a licensed gaming service provider for each tribe it contracted with. Washington-Tribal gaming compacts define "Gaming Services" as "the providing of any goods or services to the Tribe, whether on or off site, directly (or indirectly) in connection with the operation of Class II gaming in a Gaming Facility, including equipment, maintenance or security services for the Gaming Facility. Gaming Services shall not include professional legal and accounting services." CP at 502.

contract, the commissions taken by the tribes were between 65 and 67 percent of the revenue generated by all cash access transactions. The contracts stated that Everi was not exempt from federal and state taxes based on its "net income, capital or gross receipts." Clerk's Papers (CP) at 1240. The contracts did not expressly establish an agent/principal relationship between the tribes and Everi.

The Department of Revenue audited Everi for the period of January 1, 2009 through June 30, 2012 and assessed $375,222 in B&O tax. Everi filed an appeal to the Department's Appeals Division, disputing the Department's authority to tax the transaction. Everi's appeal was denied. Everi continued to pay B&O tax. From January 1, 2012 to December 31, 2015 Everi paid a total of over $1,400,000 in B&O tax to the Department. The Department did not tax the tribes on their gross revenue from commissions.

Everi then filed a Notice of Appeal and Complaint for Refund of Taxes in superior court, seeking a refund of over $1,400,000 for the B&O tax assessed toward its on-reservation cash access transactions. Everi contended that the tax was preempted by federal law and contrary to the Department's Rule 192. Everi filed a motion for summary judgment, and the Department filed a cross motion for summary judgment. In its response brief to the Department's cross motion for summary judgment, Everi alleged that there was an issue of material fact regarding the amount of gross income because it was acting as the tribes' agent.

The trial court ruled that the B&O tax was not preempted by federal law because the transactions at issue were between Everi and casino patrons, denied Everi's motion for summary judgment, and granted the Department's cross motion for summary judgment. Everi appeals the trial court's summary judgment order.

No. 50791-9-II

ANALYSIS

I. LEGAL PRINCIPLES

We review the grant of a motion for summary judgment de novo and perform the same inquiry as the trial court. *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 555, 252 P.3d 885 (2011). When reviewing a grant of summary judgment, we consider all facts and make all reasonable, factual inferences in the light most favorable to the nonmoving party. *Wash. Imaging Servs.*, 171 Wn.2d at 555. Summary judgment is appropriate when there is no genuine issue of material fact and the nonmoving party is entitled to judgment as a matter of law. CR 56(c).

A B&O tax is an excise tax on gross income imposed for the "'privilege of doing business.'" *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 39, 156 P.3d 185 (2007) (quoting 1B KELLY KUNSCH ET AL., WASH. PRACTICE: METHODS OF PRACTICE § 72.7, at 452 (1997)). The taxable event for a B&O tax is the act of engaging in a business activity. *Ford Motor*, 160 Wn.2d at 40. A business engaging in business activities within the State bears the burden of a B&O tax on the gross income from its activities. RCW 82.04.220(1). "'Business' includes all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly." RCW 82.04.140. "'Engaging in business' means commencing, conducting, or continuing in business and also the exercise of corporate or franchise powers . . . ." RCW 82.04.150. "Gross income of the business" is "the value proceeding or accruing by reason of the transaction of the business engaged in" without deductions of business services. RCW 82.04.080. Gross income includes "compensation for the rendition of services." RCW 82.04.080.

5

The B&O tax "shall be levied upon, and collectable from, the person engaging in the business activities . . . [and] shall constitute a part of the operating overhead of such persons." RCW 82.04.500; *see Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 180, 157 P.3d 847 (2007). The taxpayer bears the burden of proving it qualifies for a tax exemption. *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 149-50, 3 P.3d 741 (2000).

## II. FEDERAL PREEMPTION

Everi argues that for its business activities on tribal lands, federal law preempts B&O taxation by the State. Specifically, it argues that the tax is preempted by IGRA,[4] the Indian Trader Statutes,[5] and the *Bracker* balancing test. We disagree.

States have no regulatory authority in areas preempted by federal law. *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 333, 103 S. Ct. 2378, 76 L. Ed. 2d 611 (1983). In the area of tribal law, courts apply unique standards to determine whether federal law preempts the state's authority. *Confederated Tribes of Siletz Indians v. Oregon*, 143 F.3d 481, 486 (9th Cir. 1998). Without an express grant of authority from Congress, federal preemption regarding Indian affairs prevents a state from applying state law to tribal members on tribal land. *Confederated Tribes of Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 754, 958 P.3d 260 (1998).

---

[4] 25 U.S.C. § 2701-21 (2012).

[5] 25 U.S.C. § 261-64 (2012).

But, the application of nondiscriminatory state laws to third parties on tribal lands are not automatically preempted by federal law. *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 175, 109 S. Ct. 1698, 104 L. Ed. 2d 209 (1989). A taxed entity on tribal lands bears the burden of recording transactions with tribal members and with nontribal members to distinguish which transactions are taxable. *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 160-61, 100 S. Ct. 2069, 65 L. Ed 2d 10 (1980). When a state tax is not categorically barred or explicitly preempted by federal laws, a court conducts a *Bracker* balancing analysis, weighing the federal, tribal, and state interests at stake to determine whether the state tax is implicitly preempted. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-45, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980); *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 471 (2nd Cir. 2013).

A.    *State Not Categorically Barred from Levying a B&O Tax*

A state is without power to tax reservation lands and reservation Indians unless there is a cession of jurisdiction or some federal statutes permitting it. *Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458, 115 S. Ct. 2214, 132 L. Ed. 2d 400 (1995). The United States Supreme Court applies a "categorical approach" to cases where parties allege the State is taxing reservation lands or Indians. *Chickasaw Nation*, 515 U.S. at 458.

It is critical to first determine the entity being taxed. *Chickasaw Nation*, 515 U.S. at 458. This determination is done by examining who bears the "legal incidence of a tax." *Chickasaw Nation*, 515 U.S. at 458. The "legal incidence of a tax" falls on the person or entity who has the legal obligation to pay the tax. *Canteen Serv., Inc., v. State*, 83 Wn.2d 761, 762, 522 P.2d 847 (1974). If the legal incidence of the tax rests on a tribe or its members inside Indian country,

7

such tax is unenforceable without congressional authorization. *Chickasaw Nation*, 515 U.S. at 459. If, however, the legal incidence of the tax falls on non-Indians, no categorical bar prevents the tax. *Chickasaw Nation*, 515 U.S. at 459.

Here, the parties agree that legal incidence of the B&O tax rested on Everi. Because Everi does not claim to be a federally recognized Indian tribe or tribal member, it is a non-Indian for tax preemption purposes. *See Ariz. Dep't of Rev. v. Blaze Constr. Co.*, 526 U.S. 32, 34, 119 S. Ct. 957, 143 L. Ed. 2d 27 (1999). Thus, the Department is not categorically barred from imposing the B&O tax on Everi.

B.      *Indian Gaming Regulatory Act (IGRA)*

Everi argues that the B&O tax assessed against it is preempted by IGRA because (1) the express language of IGRA requires preemption, (2) cash access services are so closely related to gaming as to fall within IGRA, and (3) the tax was not addressed in the Washington-Tribal gaming compacts. We disagree that IGRA preempts the B&O tax assessed against Everi.

1. *IGRA Legal Principles*

Congress's broad power to regulate tribal affairs under the Indian Commerce Clause,[6] together with the "semi-independent position" of Indian tribes, create two barriers to state regulatory authority over tribal land and tribal members. *Bracker*, 448 U.S. at 142. But when Congress passed IGRA, it granted the states some role in regulating Indian gaming. *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 715 (9th Cir. 2003). IGRA was passed to allow tribes to operate gaming as a means of promoting tribal economic development, self-

---

[6] U.S. CONST. art. I, § 8.

sufficiency, and strong tribal governments and to shield tribal gaming from corrupting influences to ensure that the tribes were the primary beneficiaries of the gaming operations. 25 U.S.C. § 2702(1), (2); *Artichoke Joe's*, 353 F.3d at 715.

IGRA requires an approved Tribal-State compact regulating gaming before a tribe may operate class III gaming.[7] 25 U.S.C. § 2710(d)(1). IGRA describes the provisions that states are allowed to include in a compact. 25 U.S.C. § 2710(d)(3)(C). The compact between a tribe and a state may include provisions addressing "subjects that are directly related to the operation of gaming activities." 25 U.S.C. § 2710(d)(3)(C)(vii).

IGRA expressly preempts the governance of gaming on tribal lands. *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 544 (8th Cir. 1996). Generally-applicable laws as applied to non-Indians are not, however, preempted by IGRA when the laws' effects are *de minimis* on a tribe's ability to regulate its gambling operations. *Mashantucket Pequot*, 722 F.3d at 470; *Casino Res. Corp. v. Harrah's Entm't, Inc.*, 243 F.3d 435, 440 (8th Cir. 2001); *Barona Band of Mission Indians v. Yee*, 528 F.3d 1184, 1192 (9th Cir. 2008).

For IGRA to preempt a generally-applicable state tax imposed on a nontribal party, the tax must interfere with a tribe's ability to regulate its gambling operations. *Mashantucket*

---

[7] IGRA established three classes of gaming and these three classes are regulated differently. *See* 25 U.S.C. § 2703. "Class I gaming covers 'social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as part of, or in connection with, tribal ceremonies or celebrations.' 25 U.S.C. § 2703(6). Class II gaming includes bingo and card games that are explicitly authorized by a state or 'not explicitly prohibited by the laws of the State and are legally played at any location in the State.' [25 U.S.C.] § 2703(7)(A)(ii) . . . Class III gaming includes 'all forms of gaming that are not class I gaming or class II gaming.' [25 U.S.C.] § 2703(8). It includes the types of high-stakes games usually associated with casino-style gambling, as well as slot machines and parimutuel horse-wagering." *Artichoke Joe's*, 353 F.3d at 715 (first alteration in original).

*Pequot*, 722 F.3d at 470. When neither the Tribal-State compact at issue nor IGRA explicitly forbid nor permit the state to assess a generally-applicable tax to non-Indians, the compact and IGRA do not bar the tax. *Mashantucket Pequot*, 722 F.3d at 469. Several federal cases discussing IGRA's application to specific taxes are illustrative of these principles.

In *Casino Res. Corp.*, the Eighth Circuit held that civil claims against a subcontractor regarding gaming management and service contracts with tribes were not within IGRA's preemptive structure, even though the contracts were closely related to class III gaming. *Casino Res. Corp.*, 243 F.3d at 438-39. The Eighth Circuit stated, "Although IGRA addresses management and services contracts to some degree, it was not designed to deal with disputes like this, which, despite [the litigant's] creative characterization, is essentially a dispute between a non-tribal general contractor and non-tribal sub-contractor." *Casino Res. Corp.*, 243 F.3d at 438-39 (footnote omitted).

Similarly, in *Mashantucket Pequot*, the Second Circuit held that IGRA did not preempt a town's generally-applicable personal property tax against non-Indian owners of slot machines who leased the machines to tribal casinos. *Mashantucket Pequot*, 722 F.3d at 463. And in *Barona Band*, the Ninth Circuit held that a state tax on construction materials for a tribal casino assessed against a nontribal contractor was not preempted by IGRA. *Barona Band*, 528 F.3d at 1193. The court also refused to expand an IGRA provision addressing class III gaming to preempt a tax on a construction contractor building a tribal casino. *Barona Band*, 528 F.3d at 1193 n.3; 25 U.S.C. § 2710(d)(4). The *Barona Band* court stated that broadening an IGRA preemption to include any commercial activity related to tribal gaming such as employment

contracts, food service contracts, or innkeeper codes, "stretches the statute beyond its stated purpose." *Barona Band*, 528 F.3d at 1193.

Conversely, in *Flandreau*, the South Dakota district court held that IGRA preempted a state regulation. *Flandreau Santee Sioux Tribe v. Gerlach*, 269 F. Supp. 3d 910, 925 (D.S.D. 2017). There, a gift shop, hotel, recreational vehicle park, food and beverage services, and live entertainment events, provided *by the tribe* to nonmembers, were determined to be so closely associated with Class III gaming that the state's ability to regulate them was preempted by IGRA. *Flandreau*, 269 F. Supp. 3d at 925. The *Flandreau* court emphasized that the tribe's ancillary activities were closely associated with the tribe's sovereignty and self-governance of its own gaming. *Flandreau*, 269 F. Supp. 3d at 925. The court held that the imposition of a state tax on tribe-sold alcohol, or other tribal amenities directly related to tribal gaming, interfered with the tribe's ability to govern its own gaming and, thus, fell within the scope of IGRA preemption. *Flandreau*, 269 F. Supp. 3d at 925.

### 2. *IGRA Does Not Preempt the B&O Tax*

Everi argues that (1) the express language of IGRA preempts the B&O tax, (2) the services are so closely related to gaming as to fall within IGRA, and (3) the services it provides are compactable and thus preempted if not addressed in the Washington Tribal-State compacts. As assessed against Everi, we conclude that IGRA does not preempt the B&O tax because the tax does not impact tribal governance and is not targeted at gaming.

a. *No Preemption by IGRA Express Language*

Everi contends that the Department lacks authority to tax Everi because cash access services are gaming activities. We hold that the Department's authority to tax is not expressly preempted by IGRA because Everi's cash access services are not a class III gaming activity.

IGRA states that "nothing in this section shall be interpreted as conferring upon a State or any of its political subdivisions authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity." 25 U.S.C. § 2710(d)(4).

The B&O tax here is not a tax on class III activities. The tax is assessed upon Everi for providing cash access services. Such services are not class III gaming themselves and Everi admits as much. As a result, 25 U.S.C. § 2710(d)(4) is inapplicable. The Ninth Circuit refused to extend this IGRA subsection beyond its words, and we likewise decline to extend it here. *See Barona Band*, 528 F.3d at 1193 n.3.

b. *No Preemption by Close Association with Gaming*

Everi cites *Flandreau* to argue that if a service contract exists only because of tribal gaming operations, it must fall within the preemption of IGRA. [8] We disagree.

The test for whether IGRA preempts a tax is not whether the tax affects a contract that exists only because of a tribal casino. For IGRA to preempt a generally-applicable state tax imposed on a nontribal party, the test is whether the tax interferes with a tribe's ability to

---

[8] In discussing the tax at issue, the *Flandreau* court said, "[M]ost of the transactions the State seeks to tax are not merely tangentially related to tribal gaming, but would not exist but for the Tribe's operation of a casino." *Flandreau*, 269 F. Supp. 3d at 922.

regulate its gambling operations. *Mashantucket Pequot*, 722 F.3d at 470. Here, that Everi's cash access services would not have existed without tribal casinos is of no legal effect. The B&O tax does not interfere with the tribes' ability to govern their gaming. Everi's cash access services fall outside the realm of IGRA and are, therefore, capable of being subject to generally-applicable state tax laws.

     c. *No Preemption by Tribal-State Compacts*

Everi contends that it provides "Gaming Services" as defined in the Washington Tribal-State compacts[9] and that these services are "directly related to the operation of gaming activities" as defined in 25 U.S.C. § 2710(d)(3)(C)(vii). Br. of Appellant at 27. Consequently, Everi argues that any tax on its gaming services was compactable between the State and the tribes. Because the Washington compacts do not authorize the State to assess a B&O tax on non-Indians, Everi argues that such tax is preempted by IGRA and the resulting compacts. Everi cites *Flandreau*[10] for support. We disagree with Everi and hold that the Washington-Tribal compacts do not preempt the State's B&O tax.

Everi relies heavily on *Flandreau*'s discussions about ancillary activities being closely associated with class III gaming to argue that the case is "directly on point." Br. of Appellant at 28. In fact, *Flandreau* does not apply here. *Flandreau* involved a *tribe's own* business activities

---

[9] "'Gaming Services' means "the providing of any goods or services to the Tribe, whether on or off site, directly (or indirectly) in connection with the operation of Class III gaming in a Gaming Facility, including equipment, maintenance or security services for the Gaming Facility. Gaming Services shall not include professional legal and accounting services." CP at 502.

[10] *Flandreau*, 269 F. Supp. 3d 910.

that were directly associated with its class III gaming activities. *Flandreau*, 269 F. Supp. 3d at 925. The court held that state tax was preempted by the compact and IGRA because it interfered with tribal governance. *Flandreau*, 269 F. Supp. 3d at 925. The question here is whether a non-Indian's business activities, which are ancillary to class III gaming, interfere with a tribe's ability to regulate its gambling operations as to be compactable.

Here, Everi is not a tribe or tribal member, but rather a contractor operating within tribal lands. Everi emphasizes its relationships to the tribes as well as its licenses from tribes and the State to operate, but the taxed business activities are between Everi, a non-Indian, and non-Indian patrons at cash access machines. *See Colville*, 447 U.S. at 160-61. The tribes are not parties to the transactions upon which the B&O tax is assessed.

For B&O tax purposes, the "business" that Everi engaged in was cash access services provided to casino patrons. This involved the patron agreeing to pay a fee to receive cash and, once approved, the dispensing of cash to the patron. The fee collected by Everi is part of Everi's gross income. RCW 82.04.080. The tribes do not create a fee agreement with patrons or route financial transactions through a variety of channels. The tribes merely received a percentage of Everi's revenues. Everi was able to engage in these cash access services because of its contracts with tribes. However, these contractual relationships between the tribes and Everi do not affect the nature of Everi's separate contracts with individual patrons who chose to use cash access services.

Much like the circumstances in *Mashantucket Pequot*, the tax here is entirely dependent on Everi's ownership and operation of the cash access services. *See Mashantucket Pequot*, 722 F.3d at 460-63. Because Everi provided cash access services, its revenues from service fees

remained separate from a tribe or a tribe's governance of its gaming. The B&O tax is generally applicable to a business engaging in business activities and is not targeted at gaming. *See* RCW 82.04.140, .150, .220(1), .500; *Nelson*, 160 Wn.2d at 180. Further, there is no evidence that the B&O tax had an effect on or interfered with tribal governance. The B&O tax was assessed against Everi directly for its business activities, not against any of the tribes with whom it contracted, and the tax did not interfere with the tribes' governance or regulation of gaming. A B&O tax on Everi's cash access services was not compactable and, as a result, not within a compact's preemptive power through IGRA.

Accordingly, we hold that the State's B&O tax on Everi is neither prohibited nor preempted by IGRA.

C.    *Indian Trader Statutes*

Everi further argues that the Indian Trader Statutes preempt the Department's B&O tax because Everi provides services to tribes. We hold that the Indian Trader Statutes do not apply to Everi's cash access services.

To protect Indians from fraud when engaging in business with non-Indians, Congress passed the Indian Trader Statutes. 25 U.S.C. § 261-64; *Mashantucket Pequot*, 722 F.3d at 468. These statutes state that the Commissioner of Indian Affairs has "the sole power and authority to appoint traders to the Indian tribes and to make such rules and regulations as he may deem just and proper specifying the kind and quantity of goods and the prices at which such goods shall be sold to the Indians." 25 U.S.C. § 261.

Although broadly interpreted initially, the modern Supreme Court has held the Indian Trader Statutes' preemptive power is more limited, rejecting the argument that the statutes bar

15

"any and all state-imposed burdens on Indian traders." *Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc.*, 512 U.S. 61, 74, 114 S. Ct. 2028, 129 L. Ed. 2d 52 (1994). Similar to IGRA preemption, we examine the person taxed and where the taxed activity occurred to determine the Indian Trader Statutes' preemptive effect. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1173 (10th Cir. 2012). When a non-Indian provides goods or services to other non-Indians on tribal lands, the Indian Trader Statutes do not apply. *See Muscogee (Creek) Nation*, 669 F.3d at 1172-73.

Here, Everi is a non-Indian whose cash access services occurred on tribal lands. Everi provided the cash access services to non-Indian casino patrons, not to the tribes or tribe members. Everi bears the burden of showing it traded with Indians when it provided cash access services. *See Simpson Inv.*, 141 Wn.2d at 149-50.

Everi acknowledges that for the relevant time periods, it did not track whether kiosk patrons were Indian or non-Indian. Because this case presents a taxed non-Indian providing services to other non-Indians on tribal lands, we hold that the Indian Trader Statutes are not applicable and, accordingly, do not expressly preempt the B&O tax.

D.       *The* Bracker *Balancing Test*

Everi next argues that the B&O tax is implicitly preempted. Specifically, Everi asserts that a *Bracker* balancing test would show that "[t]he tribal and federal interests in the cash access services provided by Everi far outweigh the state interests" and, thus, implicitly preempt the

16

B&O tax applied to Everi. We hold that, after balancing federal, tribal, and state interests, the B&O tax here is not implicitly preempted by federal law.[11]

Although a state tax may not be specifically barred by a federal statute, the tax might still unlawfully infringe on tribal sovereignty or the objectives of federal legislation and require preemption. *Bracker*, 448 U.S. at 142, 149. Federal law will preempt a state tax "if the transaction giving rise to tax liability occurs on the reservation and the imposition of the tax fails to satisfy the *Bracker* interest-balancing test." *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 102, 126 S. Ct. 676, 163 L. Ed. 2d 429 (2005). The *Bracker* balancing test applies when "a State asserts authority over the conduct of non-Indians engaging in activity on the reservation." *Bracker*, 448 U.S. at 144.

To determine whether the exercise of state authority violates federal law, a court makes "a particularized inquiry into the nature of the state, federal, and tribal interests at stake." *Bracker*, 448 U.S. at 145. A court examines relevant federal law in terms of the underlying broad policies as well as historical notions of tribal independence and sovereignty. *Bracker*, 448 U.S. at 144-45. A court weighs the "two 'independent but related' barriers to the exercise of

---

[11] The Department argues that the *Bracker* balancing test does not apply here because the test does not apply to transactions between non-Indians on Indian land, particularly when no tribe has joined the proceeding. We disagree.

Courts utilize the *Bracker* test to analyze transactions between non-Indians on Indian land. *See Bracker*, 448 U.S. at 144 (holding that the test applies when "a State asserts authority over the conduct of non-Indians engaging in activity on the reservation"); *Barona Band*, 528 F.3d at 1190. The action at issue here falls squarely within the *Bracker* court's category of state action to be balanced. Because Everi's cash access services are between non-Indians on Indian lands, the *Bracker* balancing test applies.

17

state authority over a commercial activity on an Indian reservation: [1] state authority may be pre-empted by federal law, or [2] it may interfere with the tribe's ability to exercise its sovereign functions." *Ramah Navajo Sch. Bd., Inc. v. Bureau of Revenue of N.M.*, 458 U.S. 832, 837, 102 S. Ct. 3394, 73 L. Ed. 2d 1174 (1982); *Mashantucket Pequot*, 722 F.3d at 471. Last, a court examines and gives weight to "[t]he State's interest in exercising its regulatory authority over the activity in question." *Ramah*, 458 U.S. at 838; *Mashantucket Pequot*, 722 F.3d at 471. Preemption is not limited to explicit congressional expressions and ambiguities in federal law are to be construed generously. *Ramah*, 458 U.S. at 838. Where the state interest in the tax is stronger than the federal and tribal interests against it, the tax will not be preempted. *Mashantucket Pequot*, 722 F.3d at 476-77; *see Bracker*, 448 U.S. at 152.

### 1. *Federal Interests*

To determine the federal interests at stake, we examine relevant federal law in terms of the underlying policies as well as historical notions of tribal independence and sovereignty. *Bracker*, 448 U.S. at 144-45. IGRA was enacted to expressly preempt the field of tribal gaming on tribal lands. *Gaming Corp.*, 88 F.3d at 544. The policies underlying IGRA are: (1) "promoting tribal economic development, self-sufficiency, and strong tribal governments;" (2) shielding Indian gaming "from organized crime and other corrupting influences;" (3) ensuring "that the Indian tribe is the primary beneficiary of the gaming operation;" and (4) assuring "that gaming is conducted fairly and honestly by both the operator and players." 25 U.S.C. § 2702(1), (2). Of these, the core objective is assuring fairness and honesty in gaming. *Barona Band*, 528 F.3d at 1193.

Here, the B&O tax is assessed against Everi, a non-Indian doing business on Indian land. Everi admits its cash assess services are not gaming, but contends that they are so integral to tribal gaming as to fall within the parameters of IGRA. However, no class III or any other class of gaming regulated by IGRA is directly impacted by a B&O tax on Everi. Policies concerning tribes retaining control and autonomy over their gaming are not affected, nor are policies regarding the fairness of gaming. The taxed cash access services are between Everi and non-Indian individuals who are accessing their cash using Everi's machines. The taxed business activity is not gaming. Although the State receives a tangential benefit from tribal gaming through the B&O tax on Everi, the tribes remain the primary beneficiaries of their gaming operations. As such, the B&O tax does not interfere with policies supporting tribal self-sufficiency, economic independence, and tribal governance. The B&O tax has a minor effect on the federal interest involved.

2. *Tribal Interests*[12]

To determine tribal interests, we consider both tribal economic development and tribal sovereignty. *Ramah*, 458 U.S. at 837; *Mashantucket Pequot*, 722 F.3d at 471. "[C]ourts have been quick to dismiss challenges to generally-applicable laws with *de minimis* effects on a tribe's ability to regulate its gambling operations." *Mashantucket Pequot*, 722 F.3d at 470. Where a state seeks to impose a tax on a transaction between a tribe and non-Indians, the state must point

---

[12] The Department argues that Everi lacks standing to assert tribal interests. We disagree. An underlying policy of IGRA is "promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). Federal preemption claims necessarily consider tribal sovereignty and economic self-sufficiency. Accordingly, we fully consider these interests in a *Bracker* analysis.

to an interest beyond generally raising revenues. *Mescalero*, 462 U.S. at 336. However, the state need not point to a specific interest in assessing a tax on activities between non-Indians. *See Mescalero*, 462 U.S. at 336.

Because a significant component of tribal sovereignty includes geography, whether the taxed activity occurs on or off tribal lands is an important factor to weigh. *Bracker*, 448 U.S. at 151. Where the tax burden ultimately falls on the tribe, and the actions being taxed are within a wholly preemptive area of federal law, such as the education of Indian children, a state B&O tax was preempted even without an express statutory provision. *Ramah*, 458 U.S. at 843-45. However, "under some circumstances a State may exercise concurrent jurisdiction over non-Indians acting on tribal reservations." *Mescalero*, 462 U.S. at 333.

a. *Economic Interest*

Considering the tribes' economic interests, the B&O tax's effect is minimal. The contracts between Everi and the tribes do not indemnify Everi if the State were to tax its activities. Rather, the inverse is true. The tribes specifically disclaimed tax liability and stated that Everi was responsible for any taxes assessed against Everi's "net income, capital or gross receipts." CP at 1240. Further, the amount Everi paid to the tribes in commissions was not affected by the B&O tax. The contracts specified the commission was based on gross surcharges and interchange fees collected by Everi. Everi does not point to any particular injury to tribal revenues resulting from the tax. Further, the State need not point to a specific interest in assessing the tax against Everi because the B&O tax concerns business activities between non-Indians. *See Mescalero*, 462 U.S. at 336. Accordingly, the tribal economic interest is weak.

20

b. *Sovereignty Interest*

Considering tribal sovereignty, the B&O tax on Everi again has minimal effect. Everi cites *Ramah* for the proposition that the federal government has exclusive control over the privilege of doing business on tribal lands. *Ramah*, 458 U.S. at 844. Everi further argues that because the B&O tax is a tax on this privilege, it interferes with tribal sovereignty. But in *Ramah*, the court dealt with a tax burden that ultimately fell on the tribe and the activity being taxed, the construction of a school to educate Indian children, fell within a completely preemptive area of federal law. *Ramah*, 458 U.S. at 843-45.

But here, the tribes are in control of their relationships and contracts with Everi, determining the fees and commissions associated with cash access services. The tribes are not subject to the B&O tax and the legal incidence of the tax falls on Everi. *See Nelson*, 160 Wn.2d at 180. However, the taxed activity occurred within the geographic boundaries of tribal lands. As a result, the tax here has only a modest potential to encroach on tribal sovereignty.

3. *State Interests*

We examine and give weight to the State's interest in regulating the taxed activity. *Ramah*, 458 U.S. at 837; *Mashantucket Pequot*, 722 F.3d at 471. When "the goods and services sold are non-Indian, and the legal incidence of [the state's] taxes falls on non-Indians," the balance tips in a state's favor. *Salt River Pima-Maricopa Indian Cmty. v. Waddell*, 50 F.3d 734, 737 (9th Cir. 1995). A state has a legitimate interest in raising revenue to provide general government services. *Barona Band*, 528 F.3d 1192-93. A state's interests are "strongest when non-Indians are taxed, and those taxes are used to provide [those non-Indians] with government services." *Salt River*, 50 F.3d at 739; *Colville*, 447 U.S. at 157.

Here, the taxed activity is the cash access service that Everi, a non-Indian, provides to non-Indians. In doing business within Washington, Everi and its employees use a variety of government services. When providing cash access services, Everi used Washington's telecommunication infrastructure to communicate with Everi's processor in California. Everi employed Washington residents and also employed nonresidents who travelled to Washington, using Seattle-Tacoma Airport resources and Washington roads. As a result, the State has a strong interest in assessing the B&O tax against Everi to generate revenue to support the services it provides to Everi and its employees.

4. *Analysis of Federal, Tribal, and State Interests*

We hold that the State's interests outweigh the interests of the tribes and federal government. Although IGRA preempts state gaming laws, it does not preempt, through its language or underlying policies, cash access services of non-Indians to non-Indians in tribal casinos. The federal interest here is low. Tribal economic independence is not affected by this B&O tax because the legal incidence falls on Everi by law and by contract.

Tribal sovereignty interests are moderate because the activity occurred on tribal lands, but the tax does not interfere with a tribe's governance of its own gaming, nor does it prevent the tribes from doing business with Everi. Here, tribal economic interests are low and sovereignty interests are moderate.

Conversely, the state interest in taxing Everi for its cash access services is strong. The B&O tax assessed against Everi raised general revenue to support government services in Washington. In turn, Everi and its employees utilized those services.

Accordingly, after conducting a *Bracker* balancing test, we hold that the state interest in the tax outweighs the federal and tribal interests and the B&O tax assessed against Everi is not preempted by federal law.

### III.  DEPARTMENT OF REVENUE RULES

Everi contends that Department Rule 192(7) prevents it from assessing a B&O Tax against Everi's cash access services at tribal casinos.  Specifically, Everi argues that Rule 192(7)(a), (b), and (c) prevents the Department from collecting the B&O tax against Everi.  We disagree.

The Department may prescribe regulations to enforce the tax code.  RCW 82.32.300.  Any person claiming a tax benefit, exemption, or deduction from a taxable category has the burden of showing that they qualify.  *Simpson Inv.*, 141 Wn.2d at 149-50.  Rule 192 is intended to interpret federal Indian law and apply such precedent to the Department's enforcement of the tax code.  WAC 458-20-192(1)(c).  Rule 192(7) states:

> Generally, a nonenrolled person doing business in Indian country is subject to tax.
> . . .
> (a) **Preemption of tax on nonmembers - gaming.**  Gaming by Indian tribes is regulated by the federal Indian Gaming Regulatory Act.  Nonmembers who operate or manage gaming operations for Indian tribes are not subject to tax for business conducted in Indian country.  This exclusion from tax applies to taxes imposed on income attributable to the business activity (e.g., the B&O tax) . . . .
>
> (b) **Preemption of B&O and public utility tax - sales of tangible personal property or provision of services by nonmembers in Indian country.**  As explained in this subsection, income from sales in Indian country of tangible personal property to, and from the performance of services in Indian country for, tribes and tribal members is not subject to B&O (chapter 82.04 RCW) . . . .
>
> (ii) **Provision of services.**  Income from the performance of services in Indian country for the tribe or for tribal members is not subject to the B&O or public utility tax. . . .

(c) **Preemption of tax on nonmembers - balancing test - value generated on the reservation.** In certain instances state sales and use tax may be preempted on nonmembers who purchase goods or services from a tribe or tribal members in Indian country. The U.S. [S]upreme [C]ourt has identified a number of factors to be considered when determining whether a state tax borne by non-Indians is preempted, including: The degree of federal regulation involved, the respective governmental interests of the tribes and states (both regulatory and revenue raising), and the provision of tribal or state services to the party the state seeks to tax. See *Salt River Pima-Maricopa Indian Community v. Waddell*, 50 F.3d 734, (1995). This analysis is known as the 'balancing test.' . . .

WAC 458-20-192(7).

A.      *Rule 192(7)(a)*

Everi argues that Rule 192(7)(a) applies to cash access services in addition to gaming.

We disagree.

Rule 192(7)(a) states that "Nonmembers who operate or manage gaming operations for Indian tribes are not subject to tax for business conducted in Indian country." WAC 458-20-192(7)(a). As discussed above, Everi's services, while helpful to gaming, are not gaming themselves. Because Everi was not engaged in gaming, Rule 192(7)(a) is inapplicable. Accordingly, we hold that Rule 192(7)(a) does not prevent the assessment of the B&O tax against Everi.

B.      *Rule 192(7)(b)*

Everi argues that the on-reservation services it provides to the tribes fall within Rule 192(7)(b) and are not subject to B&O taxation. We disagree.

This court interprets regulations using the same rules it uses to interpret statutes. *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 322, 190 P.3d 28 (2008). When interpreting a regulation, we examine first the plain language. *Silverstreak, Inc. v. Dep't of*

*Labor & Indus.*, 159 Wn.2d 868, 881, 154 P.3d 891 (2007). If the plain language is subject to only one reasonable interpretation, it is unambiguous and the court's inquiry ends. *Skagit County Pub. Hosp. Dist. No. 1 v. Dep't of Revenue*, 158 Wn. App. 426, 437, 242 P.3d 909 (2010).

Rule 192(7)(b) states that "Income . . . from the performance of services in Indian country for . . . the tribe or for tribal members is not subject to the B&O . . . or public utility tax." WAC 458-20-192(7)(b). Here, the B&O tax is not applied to services Everi provides to the tribes. It is the service to the patrons, which Everi does not establish are tribal members, not to the tribes, that was subject to the B&O tax. As a result, Rule 192(7)(b) does not apply to Everi.

C. *Rule 192(7)(c)*

Everi argues that because it believes tribal and federal interests prevail in a *Bracker* balancing test, Rule 192(7)(c) also preempts the B&O tax. However, because the language of the section does not apply to Everi, we disagree.

Rule 192(7)(c) states that "state sales and use tax may be preempted on nonmembers who purchase goods or services from a tribe or tribal members in Indian country." WAC 458-20-192(7)(c). Here, however, the cash access services are from Everi, not purchased from a tribe or tribal member as the rule prescribes. Rule 192(7)(c) is unambiguous in requiring that the purchased services be from a tribe or tribal members on tribal land and, as a result, inapplicable to Everi. We hold that Rule 192(7)(c) does not preempt the B&O tax as assessed against Everi.

Accordingly, Rule 192(7) does not prevent the enforcement of a B&O tax on Everi.

IV. REMAND FOR ASSESSMENT OF AMOUNT, PASS-THROUGH CONSIDERATION

Finally, Everi argues that if the B&O tax is not preempted, we should remand to the trial court to determine Everi's "gross income" for the tax. Br. of Appellant at 47. Specifically, it argues that because a large percentage of the "gross income" assessed by the Department for the B&O tax was actually pass-through income for the tribes, we should remand to ascertain the correct income to be taxed.[13] We hold that as a matter of law, Everi was not acting as the tribes' agent during its cash access services.

A business engaging in business activities within the State bears the burden of a B&O tax on the gross income from its activities. RCW 82.04.220(1). "Gross income" of the business is "the value proceeding or accruing by reason of the transaction of the business engaged in" without deductions of business services. RCW 82.04.080(1). Gross income includes "compensation for the rendition of services." RCW 82.04.080(1).

In specific circumstances, a taxpayer can exclude "pass through" income from its "gross income" for B&O tax purposes. *Wash. Imaging Servs.*, 171 Wn.2d at 561-62; WAC 458-20-111. For this exception to apply, there must be a true agency relationship, where both parties consent to the control of one over the other, and the amount "passing through" cannot be attributable to the agent's business activities. *Wash. Imaging Servs.*, 171 Wn.2d at 562. Where the patrons

---

[13] The Department argues that Everi failed to plead both that it was acting as the tribes' agent and that the amount assessed was incorrect. When reviewing an order granting summary judgment, an appellate court will consider only issues called to the trial court's attention. RAP 9.12. The trial court heard and considered the gross income argument before its decision below to grant the Department's motion. Because this issue was called to the trial court's attention and ruled upon, we consider the merits of Everi's argument.

create a contractual relationship promising to pay one entity and have no knowledge of commissions paid to another entity, the amount is attributed to business activities and the entity cannot be acting solely as a collection agent. *Wash. Imaging Servs.*, 171 Wn.2d at 561-62.

Here, Everi, not the tribes, contracted with casino patrons for cash access services. The casino patrons, when they agreed to pay the fee, paid it to Everi. There is no indication that the patrons were aware of Everi's contractual obligations to provide the tribes commissions, nor did the cash access services create contractual privity between the patrons and the tribes for the fees. Accordingly, Everi was not a collection agent of the tribes and cannot reduce its gross taxable income by the amount it owed the tribes.

We affirm the order granting the Department's motion for summary judgment.

_____
Worswick, J.

We concur:

_____
Maxa, C.J.

_____
Melnick, J.