[No. 84101-2. En Banc.]
Argued January 27, 2011.    Decided May 19, 2011.

WASHINGTON IMAGING SERVICES, LLC, *Respondent*, v. THE DEPARTMENT OF REVENUE, *Petitioner*.

match samples collected from Martin, Sobania, or the children. VRP (Dec. 7, 2007) at 176, 187-90.

550

*Robert M. McKenna, Attorney General*, and *Heidi A. Irvin* and *Peter B. Gonick, Assistants*, for petitioner.

*Greg Montgomery* (of *Miller Nash LLP*) and *Monica Langfeldt* (of *Ogden Murphy Wallace PLLC*), for respondent.

*Peter S. Holmes, City Attorney for the City of Seattle*, and *Kent C. Meyer, Assistant*, amicus curiae.

*Garry G. Fujita* on behalf of Carr Krueger, amicus curiae.

¶1 MADSEN, C.J. — This is a business and occupation (B&O) tax case.[1] The taxpayer, Washington Imaging Services, is a medical imaging company that retains Overlake Imaging Associates, a professional corporation, as an independent contractor whose radiologists interpret the images that Washington Imaging generates. After patients and their insurers pay Washington Imaging for the imaging services, Washington Imaging pays Overlake a percentage of net receipts pursuant to the terms of contracts between Washington Imaging and Overlake. Although the patients are aware that the images created by Washington Imaging are interpreted by a physician, they do not know of Overlake's involvement or of the contractual arrangements between Washington Imaging and Overlake.

¶2 The issue is whether Washington Imaging must pay B&O tax on the entire amount received from the patients and their insurers, or whether the amounts that Washington Imaging pays to Overlake qualify as "pass-through" payments on which Washington Imaging does not owe B&O tax. The trial court granted summary judgment in favor of the Department of Revenue (the Department), ruling that the amounts paid to Overlake do not qualify for "pass-through" treatment. The Court of Appeals reversed.

---

[1] B&O taxes are imposed on the gross income of a business for the privilege of engaging in business activities in Washington.

¶3 We reverse the Court of Appeals. Washington Imaging's payments to Overlake do not qualify for "pass-through" treatment because Washington Imaging does not make the payments on behalf of the patients as their agent. Put another way, the patients have no obligation to pay Overlake, and Washington Imaging does not act in an agent's capacity to pass payments from the patients through to Overlake. All of the payments received by Washington Imaging constitute gross income to Washington Imaging, and the B&O tax is owed on the entire amount that Washington Imaging receives.

## FACTS

¶4 Washington Imaging is a limited liability company that operates medical imaging facilities in Bellevue and Issaquah, providing medical imaging services to patients who are referred to Washington Imaging by their physicians. Overlake is a Washington professional services corporation that employs radiologists. Pursuant to contracts between Washington Imaging and Overlake, after Washington Imaging generates a medical image (such as an x ray or CT (computed tomography) scan), an Overlake radiologist provides interpretation of the image.

¶5 The first contract dates from 1996 and governs terms and conditions under which Overlake provides its radiologists' interpretations. A second contract addresses financial arrangements and provides that Washington Imaging will bill and collect payment for both the imaging and the interpretation. By contract, Washington Imaging compensates Overlake by paying a percentage of the amounts that Washington Imaging collects. The amount that Washington Imaging must pay Overlake is determined by their contracts.[2]

---

[2] Originally, the percentages of net collections that were paid to Overlake were based on Medicare reimbursements for specific procedures, with numerous procedures averaged into broad categories of imaging. Even though Medicare reimbursements have changed over time, the percentage split between Washington Imaging and Overlake has remained the same.

¶6 The resulting product provided by Washington Imaging is a written report that assists the patients' physicians in diagnosing and treating patients. This product requires both the production of the medical image (referred to by the parties as the technical component) and the medical interpretation of the image by a radiologist (the professional component). Both of these components are essential to the medical imaging services that Washington Imaging provides; the technical component alone is incomplete in and of itself and does not constitute the medical imaging service that Washington Imaging provides.

¶7 Patients are not aware of the arrangements between Washington Imaging and Overlake. When a patient is referred to Washington Imaging, Washington Imaging schedules the patient for the requested medical image. At the imaging facility, the patient is advised that the image will be interpreted by a qualified physician—thus, the patient knows that the imaging involves both creation of the image and interpretation of the image by a physician. The patient is not told, however, that Overlake is involved or that he or she has any obligation to pay Overlake. Instead, the patient signs an agreement to be financially responsible to Washington Imaging and assigns any insurance payments to Washington Imaging:

> PRIVATE PAY: The undersigned agrees, whether signing as agent or as patient to be financially responsible to Washington Imaging Services, LLC for charges not paid by insurance. I understand this amount is due upon billing.
>
> INSURANCE COVERAGE: I hereby assign payment directly to Washington Imaging Services, LLC for benefits otherwise payable to me, but not to exceed the charges for service. Any portion of charges not paid by the insurance company will be billed to me and is then due and payable within 30 days of invoice.

Clerk's Papers (CP) at 141. Patients' insurance companies also contract with Washington Imaging, but not Overlake, to reimburse for medical imaging services provided at the Washington Imaging facilities.

¶8 For each medical imaging services transaction, Washington Imaging issues a bill for both the technical and the professional components of the medical imaging service in a single charge, i.e., global billing. However, the bill is for one amount—there are no separate charges for imaging and interpretation. If the patient is insured, the bill is sent to the insurer and an informational statement is sent to the patient. The bills are on Washington Imaging letterhead and ask that payments be remitted to Washington Imaging. The bills do not mention Overlake or any agreement or obligation to pay Overlake. If insurance does not cover the entire amount, a secondary bill is sent to the patient for a co-pay or deductible. This bill shows the initial charge, any adjustment of the charge by the insurer, the amount paid by the insurance company, and the amount the patient still owes. This bill contains the name of the radiologist, but it does not mention Overlake or give any indication of any amounts paid to or owed to Overlake.

¶9 Patients have no say in how much of the global fees collected by Washington Imaging are sent on to Overlake—as explained, they are unaware of Overlake's existence or the contractual arrangements between Washington Imaging and Overlake. Similarly, the insurance companies have no say in how much of what they pay goes to Overlake. Pursuant to the contract between Washington Imaging and Overlake, if the global bill sent by Washington Imaging is not paid, then Washington Imaging does not owe any payment to Overlake.

¶10 The Department audited Washington Imaging for the period January 2000 through July 2005 and issued B&O tax assessments on the amounts that Washington Imaging paid to Overlake. The Department's Appeals Division affirmed, and Washington Imaging paid. In September 2007, Washington Imaging commenced this refund action in Thurston County Superior Court pursuant to RCW 82.32-.180. Washington Imaging moved for summary judgment, contending that the amounts it pays to Overlake are "pass-through" payments on which it is not liable for B&O

tax under WAC 458-20-111 (Rule 111). The trial court denied Washington Imaging's motion and granted summary judgment in favor of the Department. Washington Imaging appealed and the Court of Appeals reversed. *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 153 Wn. App. 281, 222 P.3d 801 (2009).

## DISCUSSION

¶11 This matter is on review of summary judgment. A grant of summary judgment is reviewed de novo, with the court engaging in the same inquiry as the trial court. *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 280-81, 242 P.3d 810 (2010); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Here, there are no disputed issues of material fact. Rather, the issue is how the B&O tax statutes and Rule 111 apply to the facts of this case, which is a question of law reviewed de novo. *See, e.g., Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 687, 167 P.3d 1112 (2007) (application of law to the facts of a case is a question of law reviewed de novo); *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 403, 858 P.2d 494 (1993) (same); *In Estate of Jones*, 116 Wash. 424, 426, 199 P. 734 (1921) (same).

¶12 As the taxpayer seeking a refund of B&O taxes that it paid, Washington Imaging has the burden of proving that the Department incorrectly assessed the tax and it is entitled to a refund. RCW 82.32.180. Thus, Washington Imaging has the burden of showing that it is not subject to B&O tax on the payments it makes to Overlake.

¶13 B&O taxes are assessed on every person "for the act or privilege of engaging in business activities." RCW 82.04.220(1). The tax is assessed on the "gross income" of the business. *Id.* "Gross income" of the business is defined as "the value proceeding or accruing by reason of the transaction of the business engaged in" without deductions

for business expenses. RCW 82.04.080. Included in gross income is "compensation for the rendition of services." *Id.*

¶14 The issue is whether the total of the payments received by Washington Imaging is gross income of the business, with no reduction for amounts paid to Overlake. During the relevant period "[Washington Imaging] presented itself as dedicated to providing state-of-the-art outpatient medical imaging services utilizing the most sophisticated imaging equipment. [Washington Imaging's] product is a written interpretation of images acquired through its imaging technologies in the context of the patient's history by a qualified physician." CP at 135 (Resp. to the Department's First Interrogs., No. 9). The equipment and technician necessary to produce the medical images are provided by Washington Imaging. Washington Imaging obtains the necessary medical interpretation of the images, embodied in a report, under its contract with Overlake.

¶15 Thus, "the business engaged in" is the business of providing medical imaging services, which involves a "product" that is a report with both technical and professional components. Both of these components, creation of the image and interpretation of the image, are necessary to medical imaging services, the business in which Washington Imaging is engaged. The image alone—the technical component—is incomplete. The global payments that Washington Imaging receives are "value proceeding or accruing by reason of the transaction of the business engaged in" in the form of compensation for rendering medical imaging services.

¶16 Washington Imaging maintains, however, that the money it pays to Overlake is not part of its gross income because the contract between Washington Imaging and Overlake states that Washington Imaging is to have no ownership interest in the Overlake portion of the billing. Washington Imaging cannot avoid its B&O tax obligation merely because of its private contract with Overlake. *See Rho Co. v. Dep't of Revenue*, 113 Wn.2d 561, 782 P.2d 986 (1989) (terms of contract between taxpayer and another

provider of service did not control whether money received by the taxpayer was the gross income of the taxpayer for B&O tax purposes).

¶17 The agreement also declares that Washington Imaging acts as a collection agent for Overlake. Washington Imaging contends that because it acted only as a collection agent, the amounts it received from patients that were paid to Overlake do not constitute its own income, but rather Overlake's income.

¶18 For Washington Imaging to prevail on the argument that it acted only as a collection agent of Overlake, it must have collected money *owed to Overlake*. But the patients contracted solely with Washington Imaging to pay for medical imaging services and have no separate obligation to Overlake. The patient registration form, Washington Imaging's contracts with patients' insurers, and the bills that Washington Imaging sent to patients all establish that patients owed payment only to Washington Imaging, not Overlake. Therefore, regardless of what the contract between Washington Imaging and Overlake states, for purposes of its B&O tax liability, Washington Imaging was not acting as an agent of Overlake, collecting payments owed by the patients to Overlake. There is no evidence at all that the patients owed money to Overlake or that Washington Imaging collected money owed to Overlake. Therefore, based on the undisputed facts we reject Washington Imaging's argument that it acted only as a collection agency and the amounts paid by patients were not its own income.

¶19 Washington Imaging also argues, in reliance on *Walthew, Warner, Keefe, Arron, Costello & Thompson v. Department of Revenue*, 103 Wn.2d 183, 691 P.2d 559 (1984), that the money it received and then paid to Overlake was not "compensation for the rendition of services" within the contemplation of RCW 82.04.080. Washington Imaging contends that *Walthew* supports the proposition that when a business is legally barred from engaging in the practice of medicine, it cannot share in the profits of

professional medical services and is not subject to B&O tax on amounts received for them.

¶20 In *Walthew*, 103 Wn.2d at 185-90, we held that litigation costs paid to third parties by a lawyer on behalf of a client were not part of gross income, reasoning in part that attorney ethics rules mandate that clients retain ultimate liability for such expenses. Washington Imaging contends that similar to the circumstances in *Walthew*, it is legally barred from rendering professional medical services because it has nonphysician ownership and under the corporate practice of medicine doctrine it therefore cannot share in the management or profits of a medical practice.

¶21 It is true that under the common law corporate practice of medicine doctrine, absent legislative authorization, a business may not engage in the practice of medicine by employing licensed physicians. *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs.*, 168 Wn.2d 421, 430, 228 P.3d 1260 (2010).[3] Washington Imaging could not itself employ physicians to interpret its images. However, the common law corporate practice of medicine doctrine does not prevent persons without medical licenses from providing medical services through independent contractor physicians. Indeed, this is exactly how Washington Imaging operates.

¶22 "Business" for purposes of the B&O tax liability at issue "includes all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly." RCW 82.04.140. A business that employs an independent contractor does not thereby become exempt from B&O tax liability for any income derived in whole or in part because of the work the independent contractor does for the taxpayer. For example, a general contractor is liable for B&O taxes on its gross

---

[3] The Professional Service Corporation Act, chapter 18.100 RCW, is a statutory exception, allowing members of a professional limited liability company to provide professional services for which they are licensed. It appears that Overlake is such a company.

income without any reduction in income for amounts that it pays to independent subcontractors.

¶23  *Pilcher v. Department of Revenue*, 112 Wn. App. 428, 49 P.3d 947 (2002), is illustrative. There, the taxpayer, a physician under contract to provide emergency department physician services at a hospital retained a number of other physicians as independent contractors working for him to help staff the department. He contended that he was not subject to B&O taxes on the amount he received from the hospital that went toward paying the independent contractors he hired. The Court of Appeals disagreed on the basis that the taxpayer was in the business of providing services to the hospital that consisted of his management services and the services of the physicians he hired as independent contractors. *Id.* at 436. He was not entitled to deduct labor costs related to this business, including labor costs paid to independent contractors. *Id.*

¶24  Here, Overlake acted as an independent contractor and the amount due Overlake was determined by the contract between Washington Imaging and Overlake. There is no statutory or ethical bar to Washington Imaging contracting with Overlake as an independent contractor with the obligation of paying Overlake from its own funds. The fact that Washington Imaging does not have a medical license and paid an independent contractor because it could not employ doctors as employees does not relieve Washington Imaging from liability for B&O tax on the full amount it receives from its business of medical imaging services.

¶25  Accordingly, unless Rule 111 applies, the Department is correct that Washington Imaging is liable for B&O tax on the total payments that it receives from patients and their insurers, regardless of Washington Imaging's expenses in retaining Overlake to provide radiological interpretations. Whether Rule 111 applies depends upon whether the amounts that Washington Imaging owes to Overlake pursuant to their contracts qualify for "pass-through" treatment under Rule 111. Qualifying "pass-through" payments made by a taxpayer business to another entity solely as a payment

agent for the taxpayer-business's clients or customers are not subject to the B&O tax. The concept is that "amounts that merely 'pass through' a business in its capacity as an agent cannot be attributed to the business activities of the agent" and therefore "such amounts are not taxable." *City of Tacoma v. William Rogers Co.*, 148 Wn.2d 169, 175, 60 P.3d 79 (2002).

¶26 Thus, for Rule 111 to apply, Washington Imaging must be an agent of the patients to whom it provides the medical imaging services. But as the Department maintains, Washington Imaging is not an agent of the patients and Rule 111 does not apply to relieve Washington Imaging of B&O tax liability on the total of the payments it receives.

¶27 Rule 111 provides:

> The word "advance" as used herein, means money or credits received by a taxpayer from a customer or client with which the taxpayer is to pay costs or fees *for the customer or client.*
>
> The word "reimbursement" as used herein, means money or credits received from a customer or client to repay the taxpayer for money or credits expended by the taxpayer in payment of costs or fees *for the client.*
>
> The words *"advance" and "reimbursement" apply only when the customer or client alone is liable for the payment of the fees or costs and when the taxpayer making the payment has no personal liability therefor, either primarily or secondarily, <u>other than as agent for the customer or client</u>.*
>
> There may be excluded from the measure of tax amounts representing money or credit received by a taxpayer as reimbursement of an advance in accordance with the regular and usual custom of his business or profession.
>
> The foregoing is *limited to cases wherein the taxpayer*, as an incident to the business, *undertakes, <u>on behalf of the customer, guest or client, the payment of money</u>*, either upon an obligation owing by the customer, guest or client to a third person, or in procuring a service for the customer, guest or client which the taxpayer does not or cannot render and for which no liability attaches to the taxpayer. It does not apply to cases where the customer, guest or client makes advances to the taxpayer upon

services to be rendered by the taxpayer or upon goods to be purchased by the taxpayer in carrying on the business in which the taxpayer engages.[4]

(Underline and italics added.)

¶28 Rule 111 "excludes from the definition of 'gross income' certain 'advances' and 'reimbursements' for which the taxpayer assumes solely agent liability." *Rho*, 113 Wn.2d at 567; *accord William Rogers*, 148 Wn.2d at 176 ("in a traditional 'pass through' scenario, the client has sole liability for an expense paid on its behalf and is responsible for advancing the cost to the taxpayer or reimbursing the taxpayer"); *Walthew*, 103 Wn.2d at 188 ("Rule 111 excludes those reimbursements for advances which are merely pass-throughs, where the taxpayer liability, if any, to the third party *is solely agent liability*." (emphasis added)). Therefore, Washington Imaging must be acting solely as an agent for its patients in making payments to Overlake.

¶29 More specifically, for the rule to apply, three conditions must be met: "(1) the payments are 'customary reim-

---

[4] The rule includes the following examples:

For example, where a taxpayer engaging in the business of selling automobiles at retail collects from a customer, in addition to the purchase price, an amount sufficient to pay the fees for automobile license, tax and registration of title, the amount so collected is not properly a part of the gross sales of the taxpayer but is merely an advance and should be excluded from gross proceeds of sales. Likewise, where an attorney pays filing fees or court costs in any litigation, such fees and costs are paid as agent for the client and should be excluded from the gross income of the attorney.

On the other hand, no charge which represents an advance payment on the purchase price of an article or a cost of doing or obtaining business, even though such charge is made as a separate item, will be construed as an advance or reimbursement. Money so received constitutes a part of gross sales or gross income of the business, as the case may be. For example, no exclusion is allowed with respect to amounts received by (1) a doctor for furnishing medicine or drugs as a part of his treatment; (2) a dentist for furnishing gold, silver or other property in conjunction with his services; (3) a garage for furnishing parts in connection with repairs; (4) a manufacturer or contractor for materials purchased in his own name or in the name of his customer if the manufacturer or contractor is obligated to the vendor for the payment of the purchase price, regardless of whether the customer may also be so obligated; (5) any person engaging in a service business or in the business of installing or repairing tangible personal property for charges made separately for transportation or traveling expense.

WAC 458-20-111.

bursement for advances made to procure a service for the client'; (2) the payments 'involve services that the taxpayer did not or could not render'; and (3) the taxpayer 'is not liable for paying the associate firms except as the *agent* of the client.'" *Rho*, 113 Wn.2d at 567-68 (hereafter referred to as "*Christensen* test") (quoting *Christensen, O'Connor, Garrison & Havelka v. Dep't of Revenue*, 97 Wn.2d 764, 769, 649 P.2d 839 (1982)). To satisfy the third condition, a true agency relationship between the client or customer and the taxpayer is required. "The existence of that agency relationship is not controlled by how the parties described themselves" and "standard agency definitions should be used in analyzing the existence of the agency relationship." *William Rogers*, 148 Wn.2d at 177-78.

¶30 "An agency relationship generally arises when two parties consent that one shall act under the control of the other." *Rho*, 113 Wn.2d at 570; *see* RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006) ("[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act"). Consent may be implied. *Rho*, 113 Wn.2d at 570. The requirement that the principal must exercise control over the agent, *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 941, 845 P.2d 1331 (1993), means that there must be facts or circumstances that "establish that one person is acting at the instance of and in some material degree under the direction and control of the other," *Matsumura v. Eilert*, 74 Wn.2d 362, 368-69, 444 P.2d 806 (1968).

¶31 Even if the taxpayer meets the burden of establishing the existence of an agency relationship, a second condition must be satisfied—the taxpayer's liability to pay must constitute "*solely* agent liability." *Rho*, 113 Wn.2d at 573; *William Rogers*, 148 Wn.2d at 178.

¶32 The trial court reasoned that Washington Imaging failed to establish the requisite agency relationship, the

third prong of the *Christensen* test, and that the payments from Washington Imaging to Overlake were not advances made to Overlake within the contemplation of the first prong of the *Christensen* test but were a matter of the contract between Washington Imaging and Overlake. The trial court was correct.

¶33 Initially, we note that the contract between Washington Imaging and Overlake expressly states the parties' agreement that amounts paid to Overlake qualify as "pass-through" payments. Washington Imaging wisely does not claim that this resolves the question of its B&O tax liability. As stated, a private contract cannot absolve a taxpayer of taxes that are due. Whether payments qualify as "pass-through" payments depends upon the facts and circumstances of the particular case.

¶34 Next, as mentioned, Washington Imaging relies strongly on *Walthew*, 103 Wn.2d at 183. We determined in *Walthew* that the litigation costs paid to third parties by the lawyer qualified as Rule 111 "pass-through" amounts and thus were not a part of gross income. In addition to the fact that ethics rules placed the obligation of paying the costs on the client, another reason for our decision was that the clients assumed the obligation to pay these costs when they signed contracts with the law firm saying they would pay the costs. *Id.* at 185-90. We concluded that the lawyer was acting solely as agent for the client in advancing the litigation costs and therefore B&O taxes were not due on the money advanced to the third parties. *Id.* at 189.

¶35 Here, unlike in *Walthew*, the patients did not agree to pay Overlake but instead agreed to pay Washington Imaging.

¶36 Washington Imaging also relies heavily on *Medical Consultants Northwest, Inc. v. State*, 89 Wn. App. 39, 947 P.2d 784 (1997). The taxpayer, Medical Consultants Northwest (MCN), provided medical opinions in the form of written reports based on medical examinations performed by independent physicians. After completing a report, MCN billed the client. The client paid a total fee for services in

one check and MCN sent an allocable portion of the fee to the physician. If MCN did not collect from the client, it was not obligated to pay the physician. The sole issue was whether the funds paid the physicians were "pass-through" payments for which MCN had no B&O tax liability. The Court of Appeals concluded that Rule 111 applied, utilizing the three-part *Christensen* test.

¶37 There is a critical difference between *Medical Consultants Northwest* and the present case. In *Medical Consultants Northwest*, the parties stipulated to the facts and the trial court then entered findings of fact that only the client had liability for paying the physician and that MCN had no liability for paying the physicians except as an agent for its client. *Id.* at 44. The Court of Appeals said that the findings were "clearly supported by the stipulated facts." *Id.* at 45. Because these were the facts for the purposes of the court's analysis, the court had no trouble in *Medical Consultants Northwest* finding that the third prong of the *Christensen* test was met, i.e., that MCN had solely agency liability to make payments to the physicians on behalf of the clients. *Id.* at 48.

¶38 The same is not true here. There are no stipulated findings or findings of fact that justify the legal conclusion that only agency liability is involved in the present case.

¶39 Moreover, because MCN did not have a medical license, the court in *Medical Consultants Northwest* said that the payments to the physicians involved services that the taxpayer could not render, thus satisfying the second condition of the *Christiansen* test. *Id.* But this aspect of *Medical Consultants Northwest* confuses the corporate practice of medicine doctrine with B&O tax liability. As we have explained, a business that provides medical services through physicians hired as independent contractors may be liable for B&O taxes on its gross income, regardless of the fact that the business itself is barred from practicing medicine under the corporate practice of medicine doctrine. To the extent that *Medical Consultants Northwest* concludes to the contrary, it is overruled. We agree with the

Department that the presence of a license to engage in a particular business may be a relevant consideration, but not as argued in this case and *Medical Consultants Northwest* where physicians are lawfully hired as independent contractors because of the corporate practice of medicine doctrine.

¶40 Washington Imaging also makes much of the fact that it is obligated to pay Overlake only if the patient pays, seeing this as a major factor showing that the payments are "pass-through" payments. But this obligation exists only because Washington Imaging and Overlake agreed in their contract that payment would work in this way. It has nothing to do with any obligation of the patient to pay Overlake—of which there is absolutely no evidence.

¶41 Finally, Washington Imaging sets up something of a "straw man" argument. Washington Imaging contends that *William Rogers* and *Pilcher* show that the proper focus is on whether the taxpayer is liable for the payment in its own right because, if it is, then payment is a cost of business and not a "pass-through." Washington Imaging reasons that accordingly the converse is also true, i.e., that if the taxpayer is liable for the payment only when the client pays, then it is not liable in its own right and therefore the payment qualifies for "pass-through" treatment. We disagree with the premise. The proper focus is on the facts and whether they show a true agency relationship that requires payment to a third party on behalf of the recipient (e.g., client or patient) paying for the goods or services.

¶42 *William Rogers*, like *Rho*, concerned questions about the B&O tax liability of a business that provided employees for other business on a temporary basis. An important factual matter proved to be whether the temporary staffers were employees of the taxpayers or of the companies they worked for. The language that Washington Imaging relies on in *William Rogers*, 148 Wn.2d at 178 (quoting *Rho*, 113 Wn.2d at 569), is this: "As we stated in *Rho*, 'If Rho is the employer, then Rho is liable in its own right for the payment, and Rule 111 does not apply.'" What this lan-

guage means is that if the taxpayer was liable for payment in its own right, then it could not establish the requisite agency relationship (solely agent liability) since it was not making payment on behalf of a principal.

¶43 Similarly, in *Pilcher*, 112 Wn. App. at 441, the court observed that the taxpayer emergency room administrator was solely responsible for paying the emergency department physicians that he retained. The court observed that the taxpayer in *Pilcher* did not act as a "pass-through" for payments from the hospital to the physicians because under the contracts between the taxpayer and the physicians he hired, he could pay the physicians whatever they agreed upon independent of whatever he received from the hospital. *Id.* at 437. Again, the issue was whether the third *Christensen* factor was satisfied, and the court concluded that because the taxpayer was responsible for paying the physicians, his liability was not that solely of an agent. *Id.* at 441.

¶44 In each case, the taxpayer was responsible for payment to the third party in its own right and no solely agent liability existed. But, if the taxpayer does not have to pay the third party, this does not conclusively show the converse. Here, for example, Washington Imaging has no obligation to pay if the patient does not pay, but there is no contract or agency agreement *with the client* that relieves the taxpayer of having to pay if the client does not pay. Nor is there any obligation *from the client* to the third party. The fact that Washington Imaging did not have to pay Overlake if a patient did not pay simply does not mean that the payments that were made to Overlake were as an agent for the patient rather than a cost of doing business.

¶45 Washington Imaging fails to show that it is in an agency relationship with its patients and that as the patients' agent it paid Overlake on their behalf. Under the undisputed facts, the patients did not even know about Overlake, had no payment obligation running to Overlake and thus could not assent to Washington Imaging acting on their behalf to pay Overlake, and certainly had no control

over Washington Imaging regarding whether and what Washington Imaging paid to Overlake. There is simply nothing in the facts that supports any agency relationship between the patients and Washington Imaging for this purpose.

¶46 Moreover, Washington Imaging certainly cannot establish that its obligations to pay Overlake were "solely agent liability." Instead, Washington Imaging's obligation to pay Overlake was a contractual obligation as a result of agreements between Washington Imaging and Overlake, and the patients have nothing to do with this contractual arrangement, as the trial court determined. Given its contractual obligation to pay Overlake, its obligations to pay Overlake could not have been "*solely* agent liability." Instead, as the Department argues, Washington Imaging's payments to Overlake were a cost of doing business that cannot be deducted from the gross income on which B&O tax must be paid.[5]

## CONCLUSION

¶47 Applying the tax statutes to the undisputed facts, we conclude that the payments that Washington Imaging received from its patients are its gross income for B&O tax purposes. Rule 111 does not apply to remove amounts Washington Imaging paid to Overlake from Washington Imaging's gross income because those amounts were not paid by Washington Imaging solely as an agent on behalf of the patients as Washington Imaging's principals. We reverse the Court of Appeals and reinstate the trial court's grant of summary judgment in favor of the Department.

C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.

---

[5] We decline to address arguments raised first and only by amicus curiae Carr Krueger. *See Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 819, 225 P.3d 213 (2009).