IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| LENDINGTREE, LLC, | ) | No. 80637-8-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

BOWMAN, J. — This case is about the application of the business and occupation (B&O) tax statute and administrative rules for apportioning income earned in Washington. The Washington State Department of Revenue (DOR) and LendingTree LLC disagree as to where LendingTree's customers, lenders located across the country, receive the benefit of LendingTree's services. We agree with LendingTree that the benefit is received at the lender's place of business. Therefore, we reverse and remand for entry of judgment in favor of LendingTree.

FACTS

LendingTree operates an online loan marketplace that matches prospective borrowers with potential lenders. Through this marketplace,

LendingTree "provides consumers a way to connect with multiple lenders for a number of financial borrowing needs." LendingTree allows lenders to "instantly expand" their reach by connecting with LendingTree's network of 30 million borrowers and "high intent leads."

On the LendingTree website, prospective borrowers can find educational materials about the general loan process, varieties of loans, and tools to evaluate the type and amount of credit they might want. Interested borrowers can complete an online "Qualification Form" (QF) with their financial information and the type of loan sought. Upon receipt of a completed QF, LendingTree analyzes the data using proprietary software and refers the borrower to as many as five potential lenders best suited to serve the borrower's needs. The lenders evaluate the referral and contact the borrower through LendingTree's website. These services are free to borrowers. Lenders pay LendingTree a "QF Match Fee" for each referral, generally ranging from $4 to $100 depending on the type and size of the loan involved and the borrower's credit score. If a QF referral results in a loan, the lender pays a "Closed Loan Fee" of $150 to $575 based on the details of the loan.

LendingTree provides services for lenders located in the state of Washington and reports income received from these customers for the purpose of state B&O tax. DOR audited LendingTree for the period of January 1, 2010 through June 30, 2014. DOR concluded that LendingTree had not properly attributed income to Washington during the audit period. Specifically, DOR determined that LendingTree should have allocated its income based on the

location of potential borrowers rather than the lenders. As a result, DOR assessed additional tax, interest, and penalties totaling $196,236.28. DOR's Administrative Review and Hearings Division upheld the audit findings. LendingTree paid the assessment and filed a complaint for refund of the taxes, interest, and penalties.

The parties filed cross motions for summary judgment. The parties disputed the location of the benefit received by the lenders for the purpose of apportioning B&O tax. The trial court concluded:

> The service that LendingTree offers is to obtain qualification forms from consumers to present to consumers about LendingTree's services and to have consumers seek loans from a pool of LendingTree's clients, and this all happens where the consumer is located.

The trial court denied LendingTree's motion, granted DOR's motion for summary judgment, and dismissed LendingTree's complaint with prejudice. LendingTree appeals.

ANALYSIS

LendingTree and DOR agree on the facts of this case. Indeed, "[b]y filing cross motions for summary judgment, the parties concede there were no material issues of fact." Pleasant v. Regence BlueShield, 181 Wn. App. 252, 261, 325 P.3d 237 (2014). The appellate court reviews summary judgment decisions de novo. Irwin Naturals v. Dep't of Revenue, 195 Wn. App. 788, 793, 382 P.3d 689 (2016). The sole issue on appeal is the application of tax statutes to these undisputed facts. This is an issue of law reviewed de novo. Wash. Imaging Servs., LLC v. Dep't of Revenue, 171 Wn.2d 548, 555, 252 P.3d 885 (2011).

LendingTree has the burden of proving DOR incorrectly assessed the tax and establishing the correct amount of the tax.  RCW 82.32.180.

A state cannot tax value earned outside its borders.  ASARCO Inc. v. Idaho State Tax Comm'n, 458 U.S. 307, 315, 102 S. Ct. 3103, 73 L. Ed. 2d 787 (1982).  However, "by applying the principles of apportionment, states may tax that part of an interstate transaction which takes place within the state."  Smith v. State, 64 Wn.2d 323, 334, 391 P.2d 718 (1964).  This concept of apportionment applies to Washington's B&O tax imposed "for the act or privilege of engaging in business activities" in this state.  RCW 82.04.220(1).  Any person earning income taxable in Washington and in another state must apportion to Washington the income derived from business activities performed within this state.  RCW 82.04.460(1).

In 2010, the Washington legislature adopted a "single factor" receipts apportionment scheme for service income.  LAWS OF 2010, 1st Spec. Sess., ch. 23; RCW 82.04.460, .462; WAC 458-20-19402.  Under this method, the taxpayer multiplies its "apportionable income," or gross income, by the "receipts factor."  RCW 82.04.462(1), .460(4)(a).  The "receipts factor" is a fraction, calculated as follows:

> The numerator of the receipts factor is the total gross income of the business of the taxpayer attributable to this state during the tax year from engaging in an apportionable activity.  The denominator of the receipts factor is the total gross income of the business of the taxpayer from engaging in an apportionable activity everywhere in the world during the tax year.

RCW 82.04.462(2), (3)(a).

To compute the receipts factor, gross income of the business generated from each apportionable activity is attributed to the state "[w]here the customer received the benefit of the taxpayer's service." RCW 82.04.462(3)(b)(i). For a service-related business like LendingTree, "the benefit is received where the customer's related business activities occur." WAC 458-20-19402(303)(c).[1] DOR defines the "customer's related business activity" as "the customer business activity that most closely or directly relates to the services performed by the taxpayer."[2] In this case, there is no dispute LendingTree is the taxpayer and the lenders are LendingTree's customers. Accordingly, taxes are attributed to the state where the lenders conduct their business activity that most closely or directly relates to the services performed by LendingTree.

Here, we must determine the services performed by LendingTree as well as the lenders' business activities most directly related to those services. DOR and LendingTree differ in their analysis of LendingTree's business model and the resulting application of the tax statutes. LendingTree contends the lenders receive the benefit of its services at the lenders' business locations where they receive and evaluate the QF referrals. In contrast, DOR argues, "The lending institutions are receiving the benefit of LendingTree's services based on where

---

[1] (Boldface omitted.) WAC 458-20-19402(303)(c) provides:

If the taxpayer's service does not relate to real or tangible personal property, the service is provided to a customer engaged in business, and the service relates to the customer's business activities, then the benefit is received where the customer's related business activities occur.

(Boldface omitted.) The parties agree this rule governs LendingTree's apportionment.

[2] Interim Statement Regarding the Attribution of Receipts from [Research & Development] Services, WASHINGTON STATE DEPARTMENT OF REVENUE (June 22, 2017), https://dor.wa.gov/get-form-or-publication/publications-subject/tax-topics/interim-statement-regarding-attribution-receipts-rd-services. DOR cites this definition in its briefing without context or explanation for its applicability.

the consumer seeking the information is located."  In support of its argument,

DOR focuses on LendingTree's marketing and outreach to borrowers.  DOR

notes that LendingTree gears the promotion, marketing, and maintenance of its

website toward "attracting potential borrowers to its website in order to expand its

customer's footprint in the consumer loan market."

DOR's emphasis on marketing mischaracterizes LendingTree's business

model.  LendingTree does not provide marketing services for individual lenders.

Rather, LendingTree promotes, markets, and maintains its own website to

promote its own services.  LendingTree drives potential borrowers to its website

without specific mention of its individual lender customers.  LendingTree, not the

prospective borrower, knows the identity of its lender customers.  Borrowers and

lenders do not have contact until after LendingTree matches and sends a QF

referral to the lender, the lender evaluates the referral, and the lender contacts

the borrower through LendingTree's website.  That referral is the service

provided by LendingTree that is of value to the lenders.  LendingTree's

contractual payment structure supports this interpretation—lenders pay

LendingTree a QF fee for referrals, not marketing.  Lenders receive no value

from LendingTree's services until they receive referrals identifying potential

borrowers.

A recent case out of Division Two of this court supports our conclusion.  In

ARUP Laboratories, Inc. v. Department of Revenue, ___ Wn. App. 2d ___, 457

P.3d 492 (2020), the court applied the B&O attribution rules to medical testing of

bodily fluid and tissue samples.  The company's pathology laboratory in Utah

6

receives these samples from medical providers throughout the country. ARUP, 457 P.3d at 494. Upon completion of testing, the Utah laboratory sends the results via the Internet to the medical providers at their location but does not return the samples. ARUP, 457 P.3d at 494. In order to attribute ARUP's income to Washington customers properly, the court examined "where ARUP's customers receive the helpful or useful effect of its services." ARUP, 457 P.3d at 499. The court considered that ARUP's services assist medical providers in diagnosing patients and concluded, "The medical providers cannot diagnose their patients until they receive the results of the tests they ordered." ARUP, 457 P.3d at 499. The court agreed with DOR that the benefit of services is received at the medical provider's location. ARUP, 457 P.3d at 499. Therefore, any income ARUP derived from medical providers located in Washington should be attributed to the state for assessment of B&O tax. ARUP, 457 P.3d at 499.

In ARUP, the customers accrue the benefit of ARUP's services—the test results—at the location where they receive and utilize the information provided by the taxpayer. Similarly, LendingTree's customers, the lenders, accrue the benefit of LendingTree's services at the location where they receive and utilize the referrals. The origin of the information, whether the laboratory in Utah as in ARUP or borrowers in another state as in this case, does not control attribution. The focus must remain on the customer and where the customer benefits from the service.

The trial court erred by concluding the benefit of LendingTree's services accrued at the location of the borrower.  We reverse and remand for proceedings consistent with this opinion.

Brenner, J

WE CONCUR:

Verellen, J                              Leach, J.