# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WALTER DORWIN TEAGUE ASSOCIATES, INC., | No. 54959-0-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. — Walter Dorwin Teague Associates, Inc. (Teague) appeals the trial court's order granting the Department of Revenue's (DOR) motion for summary judgment, which dismissed its tax refund action. Teague argues that the trial court erred in granting summary judgment to the DOR and in denying its cross-motion for summary judgment because the DOR did not properly apportion Teague's design services income under the statute and regulations at issue.

We hold that the trial court did not err in granting the DOR's motion for summary judgment and denying Teague's cross motion. Because no genuine issue of material fact remains as to whether The Boeing Company was Teague's "customer" and that Boeing received the "benefit" of Teague's design services in Washington State, the trial court did not err in concluding that the DOR properly apportioned Teague's income to Washington State as a matter of law. Accordingly, we affirm the trial court's order granting the DOR's motion for summary judgment and in denying Teague's cross-motion for summary judgment.

FACTS

I.    FACTUAL BACKGROUND

Teague is an industrial design firm headquartered in Seattle, Washington. Teague offers design and branding services in various industries, including aviation. Relevant here, Teague specializes in designing the interior of passenger airplanes, which includes seating layouts, seating geometry, and brand placement. Teague contracts with Boeing, a major commercial airplane manufacturer, to provide such designs.

Teague provides its design services to Boeing at every stage of an airplane's planning and production cycle. From the very beginning, Teague is involved with Boeing's marketing and engineering departments in conceptualizing new aircraft designs. Once Boeing's board of directors approves an aircraft design, Teague provides a proposed interior design, which includes cabin ambience and layout. When Boeing sells an airplane to a particular airline company, Teague customizes the interior design in accordance with the airline's needs.

During the customization phase, Boeing sends Teague a statement of work to design the interior of a particular airplane. In response, Teague provides Boeing with a proposal which includes cost estimates. Once Boeing and Teague reach an agreement, Boeing issues Teague a work request. Teague then provides the design and sends an invoice to Boeing, which Boeing pays. The income received by Teague from Boeing's work requests during the customization phase is at issue in this case.

Regardless of their contractual relationship, Teague works closely with each airline company to ensure its design is consistent with that airline's standards and expectations. For example, Teague would assist an airline company by helping it decide certain design aspects like color schemes, materials, or airline-specified design elements. In certain circumstances, if an

2

airline company desires a more specialized design, then the airline company would contract directly with Teague.

Boeing uses Teague's designs to build the aircraft interiors in its manufacturing facilities in Washington State.[1] Boeing owns all designs purchased from Teague. Teague is not involved in Boeing's manufacturing process.

II. PROCEDURAL HISTORY

On August 25, 2015, Teague submitted a tax refund request with the DOR. Teague requested a refund in the amount of $1,020,105 for the tax period of January 1, 2011, through December 31, 2014. Teague contended that the DOR over-apportioned its design services income to Washington.

The DOR agreed with Teague in part. The DOR issued a partial refund of $708,951 for taxes imposed on the income that Teague received from contracting with the airline companies. The DOR denied a refund for taxes imposed on the income that Teague received from contracting with Boeing. The DOR differentiated between the locations where each of Teague's customers received the benefit of Teague's design services.

Teague appealed the DOR's partial refund denial through the DOR's administrative review process. The DOR denied Teague's petition for review. Teague requested reconsideration of the DOR's determination, which was also denied.

---

[1] Boeing maintains manufacturing facilities that are dedicated to a specific airplane model. For example, if an airline company purchases a Boeing 737, then the aircraft would be always be manufactured in Everett, Washington.

On October 11, 2018, Teague filed this tax refund action in Thurston County Superior Court under RCW 82.32.180.[2] Teague argued that the DOR over-apportioned business and occupation (B&O) taxes in Washington on the income received from its Boeing contracts and requested a refund in the amount of $344,164.

Teague and the DOR filed cross motions for summary judgment. The DOR argued that it properly apportioned the income that Teague received from its Boeing contracts to Washington. Teague argued that its income should have been apportioned to the location were the airline companies used or received the aircraft interiors, which was not in Washington.

The trial court agreed with the DOR. The trial court concluded that Boeing was Teague's "customer" under the statute and regulations at issue. Report of Proceedings (RP) at 26. The trial court further concluded that Boeing received the "benefit" of Teague's design work in Washington—where it manufactured commercial airplanes. RP at 26. Accordingly, the trial court granted the DOR's motion for summary judgment, denied Teague's motion for summary judgment, and dismissed Teague's tax refund action. Teague appeals.

## ANALYSIS

Teague argues that the trial court erred in granting the DOR's motion for summary judgment because the income received from its Boeing contracts should not have been apportioned to Washington. We disagree.

---

[2] RCW 82.32.180 provides that

> [a]ny person . . . having paid any tax as required and feeling aggrieved by the amount of the tax may appeal to the superior court of Thurston county. . . . In the appeal the taxpayer shall set forth the amount of the tax imposed upon the taxpayer which the taxpayer concedes to be the correct tax and the reason why the tax should be reduced or abated.

4

I.      STANDARD OF REVIEW

This matter is on review of a summary judgment decision.  "A grant of summary judgment is reviewed de novo, with the court engaging in the same inquiry as the trial court."  *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 555, 252 P.3d 885 (2011).  "Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  *Id.*; CR 56(c).  "'A material fact is one upon which the outcome of the litigation depends.'"  *Wash. Fed. v. Azure Chelan, LLC*, 195 Wn. App. 644, 652, 382 P.3d 20 (2016) (quoting *Kim v. O'Sullivan*, 133 Wn. App. 557, 559, 137 P.3d 61 (2006)).  Where there are no genuine issues of material fact and the issue is how the B&O tax statutes and regulations apply to the facts of the case, we treat the issue as a question of law, which is reviewed de novo.  *Wash. Imaging Servs., LLC*, 171 Wn.2d at 555.

Statutory and regulatory interpretation is also a question of law that we review de novo. *Columbia Riverkeeper v. Port of Vancouver, USA*, 188 Wn.2d 80, 90, 392 P.3d 1025 (2017).  "We apply normal rules of statutory construction to administrative rules and regulations."  *Solvay Chems., Inc. v. Dep't of Revenue*, 4 Wn. App. 2d 918, 927, 424 P.3d 1238 (2018).  The primary goal of statutory interpretation is to determine and implement the legislature's intent.  *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 173 Wn.2d 551, 556, 269 P.3d 1013 (2012).  In conducting a plain language analysis, we will not read provisions in isolation.  *Cannabis Action Coalition v. City of Kent*, 180 Wn. App. 455, 477, 322 P.3d 1246 (2014).  Rather, "'we construe[] an act as a whole, giving effect to all the language used.  Related statutory provisions are interpreted in relation to each other and all provisions [are] harmonized.'"  *Id*. at 477 (quoting *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 708, 985 P.2d 262 (1999)).

II.     LEGAL PRINCIPLES—APPORTIONMENT

Washington imposes a B&O tax "for the act or privilege of engaging in business activities" here. RCW 82.04.220(1). "The statute requires 'every person' who has a substantial nexus with this state and who conducts activities here 'with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly' to pay a percentage of the gross receipts of the resulting sales." *ARUP Labs., Inc. v. Dep't of Revenue*, 12 Wn. App. 2d 269, 279, 457 P.3d 492 (quoting RCW 82.04.220(1); RCW 82.04.140), *review denied*, 196 Wn.2d 1006 (2020).

Under RCW 82.04.460(1), "any person earning *apportionable income* . . . must, for the purpose of computing tax liability under this chapter, apportion to this state, in accordance with RCW 82.04.462, that portion of the person's *apportionable income* derived from business activities performed within this state." (Emphasis added.) "Apportionable income" means "gross income of the business generated from engaging in apportionable activities," which includes "[a]erospace product development." RCW 82.04.460(4)(a)(vi); RCW 82.04.290(3)(a). "Aerospace product development" means "design . . . activities performed in relation to the development of an aerospace product." RCW 82.04.4461(5)(b). And "[a]erospace product" means "[c]ommercial airplanes and their components." RCW 82.08.975(3)(a)(i). Because Teague's services include designing the interior of commercial airplanes, which is an "apportionable activity," the income earned from such design services is "apportionable income."[3]

---

[3] The parties do not dispute that Teague's design services are an "apportionable activity."

To determine the amount of B&O tax owed on "apportionable income," the DOR uses an apportionment formula.[4] RCW 82.04.462(1)-(3); *ARUP Labs., Inc.*, 12 Wn. App. 2d at 280. One of the important parts of the formula is "the total gross income of the business of the taxpayer attributable to [Washington] during the tax year from engaging in an apportionable activity." RCW 82.04.462(3)(a). The statute explains that a taxpayer's "apportionable activity is attributable to the state . . . *[w]here the customer received the benefit of the taxpayer's service*." RCW 82.04.462(3)(b)(i) (emphasis added). "Customer" means a "person or entity to whom the taxpayer makes a sale or renders services or from whom the taxpayer otherwise receives gross income of the business." RCW 82.04.462(3)(b)(viii). And "benefit" means "'[t]he advantage or privilege something gives; the helpful or useful effect something has.'" *ARUP Labs., Inc.*, 12 Wn. App. 2d at 282 (quoting BLACK'S LAW DICTIONARY 193 (11th ed. 2019)).

Guidance on "where the taxpayer's customer receives the benefit of the service" is provided in WAC 458-20-19402(303) (Rule 19402). Rule 19402(303)(b) addresses situations where the taxpayer's service relates to "tangible personal property," which applies here because Teague designs airplane interiors.[5] WAC 458-20-19402(303)(b)(iii)(A). In relevant part, Rule 19402(303)(b) provides that,

---

[4] The apportionment formula is described as follows: The "[s]ingle factor apportionment formula" multiplies a person's "apportionable income" by its "receipts factor." RCW 82.04.462(1). The "receipts factor" is a fraction where the numerator is the gross income of the business attributed to Washington during the tax year, and the denominator is the total gross income of the business worldwide during the tax year. RCW 82.04.462(3)(a). To determine the numerator of the receipts factor, i.e., the amount of gross income to attribute to Washington, the statute provides that the gross income of the business generated from each apportionable activity is attributable to the state "[w]here the customer received the benefit of the taxpayer's service." RCW 82.04.462(3)(b)(i).

[5] The parties also do not dispute that the Teague's design services constitute "tangible personal property" within the meaning of WAC 458-20-19402(303)(b)(iii)(A).

(b) **If the taxpayer's service relates to tangible personal property, then the benefit is received where the tangible personal property is located or intended/expected to be located.**

(i) Tangible personal property is generally treated as located where the place of principal use occurs. If the tangible personal property is subject to state licensing (e.g., motor vehicles), the principal place of use is presumed to be where the property is licensed; or

(ii) If the tangible personal property will be created or delivered in the future, the principal place of use is where it is expected to be used or delivered.

III.    TEAGUE'S INCOME WAS PROPERLY APPORTIONED TO WASHINGTON STATE

Teague argues that the trial court erred in granting summary judgment because the DOR should have apportioned its income to where the airline companies used the airline interiors; not where Boeing manufactured the airline interiors. The DOR argues that it properly apportioned the income at issue because Washington is where Teague's "customer"—Boeing—received the "benefit" of Teague's services. We agree with the DOR.

Here, Boeing was Teague's "customer." The undisputed evidence demonstrates that Boeing contracted with Teague for its design services. The undisputed evidence also demonstrates that Teague received gross income from Boeing for its interior designs at the customization phase. Because Boeing was the entity with whom Teague contracted and from whom Teague received gross income, we hold that the trial court did not err in concluding that Boeing was Teague's "customer" as a matter of law. RCW 82.04.462(3)(b)(viii).

Boeing received the "benefit" of Teague's design services in Washington. The undisputed evidence demonstrates that Boeing expected to use the created airplane interiors designed by Teague during the manufacturing process. The undisputed evidence also demonstrates that Boeing expected to use the created airline interiors in Washington. Because the created airline interiors were expected to be used by Boeing during the manufacturing process in Washington, the trial

8

court did not err in concluding that Boeing received the "benefit" of Teague's design services in Washington. WAC 458-20-19402(303)(b)(ii); *ARUP Labs., Inc.*, 12 Wn. App. 2d at 282.

Because no genuine issue of material fact remains as to whether Boeing was Teague's "customer," and that Boeing received the "benefit" of Teague's services in Washington, we hold that the trial court did not err in concluding that the DOR properly apportioned Teague's income as a matter of law. RCW 82.04.462(3)(b)(i).

Teague contends that "Rule 19402(303)(b) exclusively allocates the benefit of the taxpayer's service to the location where the designed personal property is used—without regard to the identity of the customer or where the customer uses the service." Br. of Appellant at 10 n.2. And because the airline companies were the parties that used or received the designed interiors, Teague contends that its income should have been apportioned to where the airline companies used or received delivery of the airplane interiors. We disagree.

Here, Teague's argument ignores the key statutory inquiry, which is "where the *customer* received the benefit of the taxpayer's service." RCW 82.04.462(3)(b)(i) (emphasis added). As discussed above, "'[w]e construe an act as a whole, giving effect to all the language used. Related statutory provisions are interpreted in relation to each other and all provisions [are] harmonized.'" *Cannabis Action Coalition*, 180 Wn. App. at 477 (quoting *C.J.C.*, 138 Wn.2d at 708). Because Teague's interpretation of Rule 19402 fails to give effect to the identity of the taxpayer's customer, which is required for the apportionment analysis, we hold that Teague's interpretation is misguided. *Cannabis Action Coalition*, 180 Wn. App. at 477; RCW 82.04.462(3)(b)(i).

Teague contends that the examples 11 and 12 set forth in Rule 19402(304)(b) support its argument that income must be sourced to where the final product is used and that the identity of the taxpayer's customer is irrelevant to the apportionment analysis. Examples 11 and 12 illustrate

a situation where a taxpayer's service income is apportioned to where its customer's factories are located because that is where the customer intended to use the created tangible personal property:

> (b) **Services related to tangible personal property.**
> **Example 11.** Big Manufacturing hires an engineer to design a tool that will only be used in a factory located in Brewster, Washington. Big Manufacturing receives the benefit of the engineer's services at a single location in Washington where the tool is intended to be used. Therefore, 100% of engineer's receipts from this service must be attributed to Washington.
> **Example 12.** The same facts as in Example 11, except Big Manufacturing will use the tool equally in factories located in Brewster and in Kapa'a, Hawai'i. Therefore, Big Manufacturer receives the benefit of the service equally in two states. Because the benefit of the service is received equally in both states, a reasonable method of proportionally attributing receipts would be to attribute 1/2 of the receipts to each state.

WAC 458-20-19402(304)(b) (alterations in original). Because the above examples demonstrate that the apportionment analysis focuses on where the taxpayer's customer intended to use the created tangible personal property, we hold that Teague's argument fails.

Teague further contends that examples 13 and 14 set forth in Rule 19402(304)(b) support its argument that income must be apportioned to where the final product would be used—without regard to the identity of the customer or where the customer uses the service. Examples 13 and 14 provide that:

> **Example 13.** Taxpayer, a commissioned salesperson, sells tangible personal property (100 widgets) for Distributor to XYZ Company for delivery to Spokane. Distributor receives the benefit of Taxpayer's service where the tangible personal property will be delivered. Therefore, Taxpayer will attribute the commission from this sale to Washington.
> **Example 14.** Same facts as in Example 13, but the widgets are to be delivered 50 to Spokane, 25 to Idaho, and 25 to Oregon. In this case, the benefit is received in all three states. Taxpayer shall attribute the receipts (commission) from this sale 50% to Washington, 25% to Idaho, and 25% to Oregon where the tangible personal property is delivered to the buyer.

WAC 458-20-19402(304)(b). Examples 13 and 14 illustrate a scenario where the taxpayer's customer—the distributor—received the benefit of taxpayer's services in different states. *See* WAC 458-20-19402(304)(b). Because examples 13 and 14 focus on where the taxpayer's customer received the benefit of the taxpayer's services, those examples do not support the interpretation that the identity of the taxpayer's customer is irrelevant to the apportionment analysis. Accordingly, Teague's reliance on the examples in Rule 19402(304)(b) fails.

In sum, the undisputed facts demonstrate that Boeing was Teague's "customer" because Boeing was the party that Teague contracted with and received gross income from. RCW 82.04.462(3)(b)(viii). The undisputed facts also demonstrate that Boeing received the "benefit" of Teague's design services in Washington because that is where Boeing expected to use the created airplane interior designs during the manufacturing process *ARUP Labs., Inc.*, 12 Wn. App. 2d at 282; WAC 458-20-19402(303)(b)(ii). Because no genuine issue of material fact remains as to whether Boeing was Teague's "customer," and that Washington is where Boeing received the "benefit" of Teague's services, the trial court did not err in concluding that the DOR properly apportioned Teague's design services income as a matter of law. RCW 82.04.462(3)(b)(i); *Wash. Imaging Servs., LLC*, 171 Wn.2d at 555. Accordingly, we affirm the trial court's order granting the DOR's motion for summary judgment.

_____
Veljacic, J.

I concur:

_____
Lee, C.J.

11

MAXA, J. (dissenting) – The majority opinion's analysis of RCW 82.04.462(3)(b)(i) and WAC 458-20-19402(303)(b)(ii) (Rule 19402) is not unreasonable. But the majority disregards the fact that there is another reasonable interpretation of those provisions, making them ambiguous. And it is well-settled that when a tax statute is ambiguous, the statute must be construed in favor of the taxpayer. *E.g.*, *Qualcomm, Inc. v. Dep't of Revenue*, 171 Wn.2d 125, 131, 249 P.3d 167 (2011). Therefore, I dissent.

RCW 82.04.462(3)(b)(i) states that a business's gross income is attributable to the state "[w]here the customer received the benefit of the taxpayer's service." The majority concludes that Boeing received the benefit of Teague's design services in Washington, where Boeing used the design to manufacture airplane interiors for its commercial airplanes. But another reasonable interpretation is that Boeing received the benefit of Teague's design services when Boeing sold the completed airplanes to out-of-state airlines. Certainly that is when Boeing received the *financial* benefit of Teague's design services. Therefore, Rule 19402 must be consulted for clarification.

Rule 19402(303) "explains the framework for determining where the benefit of a service is received." Section (303)(b) states:

> If the taxpayer's service relates to tangible personal property, then the benefit is received where the tangible personal property is located or intended/expected to be located.
>
> (i) Tangible personal property is generally treated as located where the place of principal use occurs. . . .
>
> (ii) If the tangible personal property will be created or delivered in the future, the principal place of use is where it is expected to be used or delivered.

These provisions apply because Teague's design services related to tangible personal property: airplane interiors.

The majority suggests that subsections (303)(b)(i) and (ii) must be interpreted as referring to the customer's – here Boeing's – principal place of use. But these subsections do not refer to the *customer's* place of use or even contain the word "customer." They refer to where the tangible personal property will be used or delivered.

Regarding subsection (i), the principal place of use of the airplane interiors could be where Boeing installs the interiors in its airplanes. But an equally reasonable interpretation is that the principal place of use is where the airlines purchasing the airplanes containing the interiors are located. Regarding subsection (ii), there is no question that the interiors will be delivered in the future and that the place of delivery is where the airlines are located, not where Boeing is located.

In short, RCW 82.04.462(3)(b)(i) and Rule 19402 either provide that Teague should not be subject to B&O taxes for its design services or are hopelessly unclear. Any ambiguity must be resolved in favor of Teague. *Qualcomm*, 171 Wn.2d at 131. Therefore, Teague was entitled to summary judgment.

_____
Maxa, J.